# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 11-CR-479-2 |
| v. | ) Judge Sharon Johnson Coleman |
| ALICE SHERROD, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The government previously moved this Court to order the immediate turnover of defendant Alice Sherrod's 403(b) Tax Sheltered Annuity Account held by respondent Horace Mann. This Court denied that motion based on its determination that the government had not clearly set forth the legal basis for its motion. In doing so, this Court cited to *United States v. Dahlman*, 61 F. App'x 253, 256 (7th Cir. 2003), an unpublished decision in which the Seventh Circuit vacated a turnover order where the government had "never explained under what theory it was entitled to immediately collect money." This Court cited to *Dahlman* only for the narrow proposition that it is proper to reject a turnover order that fails to clearly explain the legal theory under which it is made.

The government subsequently filed a renewed motion for a turnover order [394], clarifying that it was seeking the turnover order under the Federal Debt Collection Procedures Act as an *in rem* remedy and not as an extension of the restitution payments that Sherrod is required to make while on supervised release. 18 U.S.C. § 3613; 28 U.S.C. § 3001 *et seq.*.

Here, the judgment against Sherrod provided that, as a term of supervised release, she must "pay any financial penalty that is imposed by this judgment that remains unpaid at the commencement of the term of supervised release." It also set forth a payment schedule, providing that Sherrod must make monthly restitution payments of at least 10% of her net monthly income

1

while on supervised release. These provisions, however, amount to a collection mechanism, and do not limit the government's ability to collect restitution through the additional civil remedies available to it. *United States v. Hanhardt*, 353 F. Supp. 2d 957, 960 (N.D. Ill. 2004) (Norgle, J.); *see also United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007) (rejecting as meritless the defendant's argument that a turnover order should be denied "because the criminal judgment specified that restitution be paid in installments"); *United States v. Shusterman*, 331 F. App'x 994, 996–97 (3rd Cir. 2009) (same).

Sherrod now contends that the government's renewed motion is improperly brought, that it should be denied because it will impose an undue hardship on Sherrod, or that this Court should reserve ruling until a pending Seventh Circuit case that might preclude turnover in this instance has been resolved.

As an initial matter, this Court turns to Sherrod's contention that the government's motion is improperly brought pursuant to Federal Rule of Civil Procedure 59(e). Sherrod is partially correct in this respect. Although the government claims that this court committed a manifest error of law, that contention is based on a misapprehension of this Court's purpose in citing to *Dahlman*. The government therefore fails to identify a manifest error of law or fact, newly discovered evidence, or an intervening, substantial change in the controlling law sufficient to warrant reconsideration. Fed. R. Civ. P. 59. Although this Court believed it to be clear from its prior order, it now clarifies that its prior denial of the government's turnover order was issued without prejudice to the subsequent refiling of a renewed turnover order addressing the concerns that the Court raised. It thus elects to treat the government's motion as a renewed motion rather than a motion for reconsideration, and accordingly turns to its merits of that motion.

Sherrod contends that this Court should deny the government's motion in light of the substantial hardship that turnover would result in. The Federal Debt Collection Procedure Act (FDCPA) provides that "[t]he court may at any time on its own initiative or the motion of an

2

interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter." 28 U.S.C. § 3013. This language is drawn from New York Civil Practice Law and Rules § 5240, which has been described as existing to "prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts." *Paz v. Long Island R.R.*, 241 A.D.2d 486, 487, 661 N.Y.S.2d 20 (N.Y. App. Div. 1997). In interpreting the New York provision, courts have noted that modification is warranted in only "the gravest circumstances," upon a showing by the debtor of substantial hardship and an unfair burden in meeting obligations. *Midatlantic Nat. Bank/North v. Reif*, 732 F. Supp. 354, 357 (E.D.N.Y. 1990).

Of the limited number of cases interpreting the federal hardship provision, this Court finds two instructive. In *United States v. King*, the 66 year old defendant had a monthly income of $1,200 in social security payments, was living rent-free with his family, and was still able to work. The court in that case found that hardship did not exist because the defendant had "a place to stay and an income stream" and because there was "no record of mental health or substance abuse problems." *United States v. King*, Criminal No. 08-66-01, 2012 WL 1080297, at * 6 (E.D. Pa. Apr. 2, 2012). Conversely, a temporary hardship was found in *United States v. Ogburn* where the defendant's husband had just lost his job, the defendant earned only $22,100 per year, and the couple had two young children to support. *United States v. Ogburn*, 499 F. Supp. 2d 28, 32 (D.D.C. 2007). As of now, this court perceives that this case falls somewhere in the middle of these examples.

Based on the facts described in the presentence report Sherrod, who is 64 years old, suffers from kidney disease, diabetes, blindness, high blood pressure, and high cholesterol. Sherrod recently received a kidney transplant, and her attorney reports that she was hospitalized for neutropenia prior to beginning her oft-delayed prison sentence. Sherrod has been retired since 2010 as a result of her frequent dialysis regimen. Based on her age, health, and time outside of the workforce, Sherrod

contends that she is unlikely to be able to find new employment. At the time of the presentence report Sherrod reported that her monthly income was less than half of her monthly expenses and that she had a substantial amount of debt, primarily arising from her medical expenses. The only assets of any value that Sherrod reported were a 14-year-old car and the funds now at issue.

This Court strongly sympathizes with the government's urgent desire to collect some small portion of the over $7 million in restitution that Sherrod owes as a result of her criminal conduct. As this Court noted at sentencing, Sherrod's crimes took advantage of and harmed an especially vulnerable segment of the population. Any amount of restitution, however small in comparison to the $7 million in harm that Sherrod and her compatriots caused, would help to mitigate that harm. Simultaneously, however, this Court is obligated to give serious consideration to Sherrod's asserted hardship.

In assessing Sherrod's claim of hardship, this Court is severely hampered by the lack of information available to it. A determination such as this would ordinarily require an evidentiary hearing at which the defendant would be able to testify and present evidence concerning her income, her employability, her health, her housing situation, the extent of support that she receives from her family, and the extent of her medical debt. This Court, however, is not inclined to have the defendant hauled before it for such a hearing in light of her medical condition and the costs that her transport would therefore incur for the Bureau of Prisons. Moreover, given the duration of Sherrod's incarceration and the state of her health it is unlikely that a contemporaneous hearing would actually reflect upon the realities that will be facing Sherrod on her release. And many aspects of Sherrod's future financial condition such as her employment status, her housing costs, and the amount of support that her family will provide cannot be predicted with any certainty until after Sherrod's release.

4

Based on the outdated and limited information contained within the presentence investigation report, this Court believes that Sherrod might well be able to make a showing of substantial hardship. This Court does not decide that question, however, because it cannot do so based solely on the stale information now before it.

In light of the competing and compelling equities before it and the considerations set forth above, this Court stays consideration of the government's renewed motion for a turnover order until Sherrod has begun her term of supervised release, at which time this Court will be better able to assess the true scope of Sherrod's financial hardships based on current information about Sherrod's circumstances. In the interim, Sherrod's 403(b) Tax Sheltered Annuity Account with Horace Mann is to remain frozen pursuant to the terms set forth in the Third-Party Citation to Discover Assets until further order of this Court. This Court cautions Sherrod that, in assessing her financial hardship after her release, this Court will take into account the extent to which she has engaged in diligent, good faith efforts to seek employment, to reduce her monthly expenses, and to satisfy her restitution obligations.

SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: November 7, 2016